**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**UNITED STATES OF AMERICA,
ex rel. JOE LIOTINE, individually,**

**Plaintiffs,**

**v.**

**CDW GOVERNMENT, INC.,
an Illinois corporation,**

**Defendant.**                                                        **No. 05-33-DRH**

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

**I.   Introduction**

On January 19, 2005 Plaintiff Liotine filed a two Count Complaint against Defendant CDW Government, Inc., ("CDW-G") pursuant to False Claims Act, **31 U.S.C. § 3729** et seq. ("FCA"). Count I alleges that CDW-G engaged in fraudulent conduct in connection with its sales to the General Sales Administration ("GSA"). Specifically, under Count I Plaintiff alleges that Defendant charged the Government for shipping when the contracts provided for free shipping, overcharged the Government for other shipping rates, overcharged the Government by failing to offer the "most favored customer" pricing as required by the contract, failed to remit proper amount of Industrial Funding Fee ("IFF"), sold items to the Government even though CDW-G was not an authorized seller, and sold non-trade compliant items. Count II alleges that CDW-G retaliated against Plaintiff in violation of the FCA.

In his Complaint, Plaintiff alleges that he worked for Defendant CDW-G

from March 20, 1997 to July 7, 2001[1] as a customer service representative, shipper, and a sales representative (*Id*. at ¶7).   Plaintiff, acting as a sales representative, received and filled purchase orders from government agencies, including GSA and U.S. Mint (*Id*. at ¶ 8).   The Government contracts with Defendant provided free ground shipping and reduced expedited shipping for both GSA and the U.S. Mint (*Id*. at ¶ 38).   Plaintiff claims that CDW-G and its sales representatives, in order to maximize its gross profits, increased the price of products being sold to GSA. Defendant further charged the GSA for shipping costs and increased expedited shipping costs (*Id*. at ¶ 46-61).   Further, CDW-G also increased shipping costs on items sent to the U.S. Mint. (*Id*. at ¶¶ 63-67).   Plaintiff alleges that the U.S. Mint was continually overcharged for shipping over the course of two years (*Id*.).   During the Spring of 2001, Plaintiff alleges that Defendant began withholding IFF from GSA by failing to determine the shipments were being sent to the GSA through their computer software (*Id*. at ¶¶ 49-52).   Plaintiff further alleges that he has knowledge of the fraudulent statements and actions towards the Government and is the original source of those allegations (*Id*. at ¶ 10).   Plaintiff alleges that while employed by Defendant, he began contacting Simon Fritz of the U.S. Mint regarding the actions Defendant was committing against the U.S. Mint (*Id*. at ¶¶ 32-33).

Now before the Court is Defendant CDW-G's motion to dismiss Count

---

[1] Plaintiff was fired from his job with CDW-G on July 7, 2009.  Plaintiff alleges that he was fired for his attempts to provide evidence to the Government regarding CDW-G's fraudulent activities. Defendant alleges that Plaintiff was fired because he stole customer lists in violation of CDW-G's Confidentiality Agreements with Plaintiff.

I of Relator's Complaint pursuant to **FEDERAL RULES OF CIVIL PROCEDURE 12(c) and 12(b)(1)** (Doc. 70).  Defendant argues that Plaintiff has failed to state Count I with particularity pursuant to Rule 9(b) as he fails to identify a single false claim or when such claims were made and to which government entity was involved.  Defendant further argues that even if Plaintiff has met his burden under Rule 9(b), the Court lacks subject matter jurisdiction over Count I due to the FCA's public disclosure bar. Defendant argues that Plaintiff's allegations regarding freight charges was published in an article in January 2002 and his allegations regarding discounts and administrative fees came from CDW-G's own disclosures to the government and thus Plaintiff could not be an "original source" of these allegations.  Plaintiff Relator has filed a response to Defendant's motion (Doc. 82).  Defendant has filed a reply (Doc. 84).  Plaintiff has further supplemented his response (Doc. 95) to which Defendant has filed a response (Doc. 96).  Defendant has also supplemented its motion to dismiss with new case law which it claims supports its position that Plaintiff's Count I should be dismissed pursuant to the public disclosure bar (Doc. 97).  Plaintiff has filed a response to that supplement (Doc. 98) to which Defendant has filed a reply (Doc. 99).

The Government has also filed a response (Doc. 80).  While the Government has not taken a position as to the arguments presented in Defendant's motion to dismiss, the Government asks that should the Court dismiss Count I that the dismissal be without prejudice to the Government so that the Government's interest in the matter will not be harmed.  The Government states that it has not

completed its investigation of Plaintiff's claims and has not determined whether it will pursue any future action against Defendant.

Based on the following, the Court **DENIES** Defendant's motion to dismiss (Doc. 70).

## II.   Discussion

### A.    Objection to Filing Under Seal

The Court, as an initial matter, notes that Relator has filed an Objection to CDW-G filing its memorandum in support of its motion to dismiss under seal.  In order for a document to be filed under seal a party must demonstrate "good cause to seal any part of the record."  *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, **178 F.3d 943 (7th Cir. 1999);** *see also Union Oil Company of California v. Leavell*, **220 F.3d 562 (7th Cir. 2000)**.  The Court agrees with Plaintiff Relator that Defendant CDW-G has failed to show any cause for filing its Memorandum in Support (Doc. 71) and its Reply Memorandum (Doc. 84) under seal.  Therefore, the Court will unseal the stated documents.

### B.    Motion to Strike Footnote 32 and Exhibit A

Plaintiff has also filed a motion to strike "Footnote 32" and "Exhibit A" from CDW Government, Inc.'s reply memorandum (Doc. 90).  Plaintiff argues that Footnote 32 and Exhibit A should be stricken because they are not a proper method for attacking evidence and support an "unsupported proposition."  Footnote 32 of CDW-G's Reply states that Plaintiff Realtor's affidavit "should be afforded no weight

because it is not credible" and offers Exhibit A, a customer list which CDW-G argues is the same customer list which led to Relator's discharge for stealing documents. Plaintiff Relator has not cited any case law or other authority for striking Exhibit A or Footnote 32, nor does the Court find any reasons for striking Defendant CDW-G's argument in Footnote 32 or Exhibit A.   Therefore, the Court **DENIES** Plaintiff Relator's motion to strike "Footnote 32" and "Exhibit A" from CDW-G's reply memorandum (Doc. 90).   The Court also **DENIES** Plaintiff's request to vacate the stay on discovery pending the resolution of Defendant CDW-G's motion to dismiss.

**C.     Motion to Strike Exhibit D**

Defendant CDW-G has also filed a motion to Strike Exhibit D of Plaintiff Relator's response in opposition to Defendant's motion to dismiss Count I of the Complaint and Portions of the opposition related to Exhibit D (Doc. 86).  Specifically, Defendant CDW-G move to strike Exhibit D and Relator's opposition related to the Exhibit (pages 4-6 of Doc. 82) because it is related to a November 2007 settlement presentation CDW-G made to the Department of Justice and is not admissible. CDW-G argues that Exhibit D is a per se violation of **FEDERAL RULE OF EVIDENCE 408**[2] "because it is being used to demonstrate liability."

However, the Court agrees with Plaintiff Relator that the powerpoint presentation is not being offered here to prove liability but to demonstrate Plaintiff's

---

[2]  Rule 408 provides that evidence: 1) "furnishing or offering or promising to furnish...a valuable consideration in compromising or attempting to compromise the claim; and 2) conduct or statements made in compromise negotiations regarding the claim..." is not admissible when offered to prove liability of the amount of a claim.  **FED. R. EVID. 408.**

position that he has met the requirements of **FEDERAL RULE OF CIVIL PROCEDURE 9(b)**.  Further, when determining whether to exclude evidence, the Court must "consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect of future settlement negotiations." ***Zurich American Insurance company v. Watts Industries, Inc., 417 F.3d 682, 689 (7th Cir. 2005)***.  As Plaintiff Relator points out, the powerpoint presentation is not being used to prove liability on Defendant CDW-G's part but rather it is being used to show that the allegations contained in Plaintiff's Complaint were stated with sufficient particularity.  Further, the Court does not see how the use of the materials in this situation will have a chilling effect on future negotiations with the Government.  Therefore, the Court **DENIES** Defendant CDW-G's motion to strike Exhibit D (Doc. 86).

### D.  Failure to Plead Fraud with Particularity

Defendant CDW-G first argues that Count I should be dismissed pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(c)** and **9(b)** because Plaintiff has failed to plead his claim of fraud with particularity.   Specifically, Defendant argues that Plaintiff has failed to allege the who, what, where, when, and how as required by Rule 9(b). ***See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)**.  Defendant argues that Plaintiff merely parrots the language of the FCA and that he has failed to allege a specific claim where CDW-G overcharged the Government.

**Federal Rule of Civil Procedure 12(c)** "permits a party to move for

judgment on the pleadings after the pleadings have closed." ***Northern Ind. Gun &***

***Outdoor Shows v. City of S. Bend***, **163 F.3d 449, 452 (7th Cir. 1998)**.  With

regards to **Rule 9(b)**, F<small>EDERAL</small> R<small>ULE OF</small> C<small>IVIL</small> P<small>ROCEDURE</small> **9(b)** provides:

> In alleging fraud or mistake, a party must state with particularity the
> circumstances constituting fraud or mistake. Malice, intent, knowledge,
> and other conditions of a person's mind  may be alleged generally.

**Rule 9(b)** requires that a plaintiff provide the "who, what, when, where,

and how: the first paragraph of any newspaper story." ***DiLeo***, **901 F.2d at 627**.

The purpose of **9(b)**, in regards to fraud claims, "is to minimize the extortionate

impact that a baseless claim of fraud can have on a firm or an individual" because,

if a fraud claim is too vague during discovery, the claim "will stand unrefuted, placing

what may be undue pressure on the defendant to settle the case in order to lift the

cloud on its reputation." ***Fidelity Nat. Title Ins. Co. of New York v. Intercounty***

***Nat. Title Ins. Co.,*** **412 F.3d 745, 748-49 (7th Cir. 2005)**. **Rule 9(b)** requires a

plaintiff to provide sufficient specificity to allow a defendant accused of fraud to

respond "swiftly and effectively if the claim is groundless." ***Id***.  As the FCA is an anti-

fraud statute, it is subject to the heightened pleading requirement of Rule 9(b).

***United States ex rel. Gross v. AIDS Research Alliance-Chicago***, **415 F.3d 601,**

**604 (7th Cir. 2005)**.   An FCA plaintiff cannot rely on the mere probability that a

false claim occurred but must at least identify one false claim that was submitted.

***United States ex rel. Crews v. NCS Healthcare of Il. Inc.,*** **460 F.3d 853, 856**

**(7th Cir. 2006)**.

Here, the Court finds that Plaintiff has alleged his claims of fraud in Count I with enough particularity to satisfy **Rule 9(b)**.  Although Defendant argues that Plaintiff has failed to allege people involved in the fraudulent activity, Plaintiff has alleged that CDW-G's sales representatives and sales managers participated in the fraud and also lists specific people including Chris Rother, Director of Government Sales, and manager Bob Rossie who directed sales representatives, including Plaintiff, in the fraudulent activities.  As to the "what", Plaintiff has alleged eight ways in which CDW-G filed false claims to the United States Mint and GSA and has provided examples of specific products for which Defendant had overcharged the Government and also the specific amounts that Defendant overcharged.  Plaintiff describes one such instance where he overcharged Pricilla Phillips at the U.S. Mint for shipping of a 2-3 once memory chip and discusses another event involving the shipment of a Lexmark Printer to Ann Baker, the head IRS purchaser located in Atlanta, Georgia.  Defendant points to the case of **United States ex rel. Crews v. NCS Healthcare of IL. Inc.**, **460 F.3d 853 (7th Cir. 2006)**, arguing that Plaintiff here has made generic references to the items at issue.  In that case, the Seventh Circuit determined that the Plaintiff had utterly failed to provide evidence of false claims or point to vouchers or claims for certain pills that had been recycled and repackaged.  Instead, plaintiff had determined that ten to twenty percent of the medication had been recycled, but failed to point to a specific claim regarding those drugs and certain claims where the same drug had been double billed.  Here,

however, Plaintiff has pointed to specific items by brand which Defendant submitted false claims for.   Plaintiff has submitted substantially more information than that which was provided in **Crews** and has offered more evidence than mere that a false claim has been submitted as discussed more fully below.

As to the "when" factor, CDW-G argues that the time frames are "vague and open-ended."   Defendant argues that Plaintiff has submitted a period between 1999 to the present for which the fraudulent activities allegedly took place (See Doc. 2 ¶¶ 42 & 71).   While Plaintiff has alleged in one place that the alleged fraudulent claims took place from at least 1999 to the present, Plaintiff has also alleged specific time frames when some fraudulent claims were submitted (See Doc. 2 ¶ 70).[3] ***See United States ex rel. Raymer v. Univ. of Chicago Hospitals*, Case No. 03 C 806, 2006     (N.D. Ill. Feb 28, 2006) (failed to allege specific dates or narrow time period); *Garst v. Lockheed Integrated Solutions Co.*, 158 F. Supp. 2d 816, 821 (N.D. Ill. 2001)("it is hard to imagine how Defendant can respond to the allegation that fraud was committed over a ten year period without knowing the time that some of the false claims were submitted" (citation omitted)).**   The Court finds that Plaintiff has provided specific examples of false claims submitted by Defendant, including specific time frames, and therefore has met the "when" factor. Here, Plaintiff has provided examples of specific false claims to U.S. Mint,

---

[3] Plaintiff has alleged that non trade compliant Tektronix printers were shipped between 1999 and 2001.  Plaintiff alleges that for over two and one half years Defendant overcharged the U.S. Mint for shipping and Plaintiff has provided examples of such overcharges which occurred during the time period. In 2000, Plaintiff alleges that CDW-G overcharged the U.S. Mint for shipping 2-3 memory chips.

including the items that were shipped, who they were shipped to, a time frame in which they were shipped, and the issues of fraud involved with the claims.[4]

Plaintiff has also described the method of fraudulent conduct conducted by Defendant.  Plaintiff alleges that Defendant submitted invoices to both GSA and the U.S. Mint which over billed the government, contained improper shipping rate, and which were for non-trade compliant products and were for products which Defendant was not an authorized seller.  Further, this is also not like the case in ***United States ex rel. Crews v. NCS Healthcare of IL. Inc.*, 460 F.3d 853 (7th Cir. 2006)** and ***United States ex rel. Fowler v. Rx, LLC*, 496 F.3d 730 (7th Cir. 2006)**.  In those cases the Plaintiffs relied on mere suspicions and failed to show a specific claim where a fraud had actually occurred.  The plaintiff there had not actually seen the claims for drugs being sent out, but believed that false claims were being submitted based on the amount of pills being recycled.  Here, Plaintiff does not rely on mere suspicions of fraudulent schemes that *might* have led to false claims, but instead alleges actual false claims to which he had personal knowledge of as he witnessed the fraudulent schemes.  Therefore, the Court finds that Plaintiff has plead Count I with enough particularity to put Defendant on notice of the allegations of fraud against them.  Therefore, the Court **DENIES** Defendant's motion to dismiss for failure to plead Count I with particularity.

---

[4] Plaintiff provides as an example of Defendant overcharging the U.S. Mint a false claim that occurred in 2000 when Defendant shipped a memory chip to Priscilla Phillips.  Defendant allegedly charged the U.S. Mint $29 for overnight shipping when the actual shipping price was supposed to be $3.99.

### E.  Public Disclosure Bar

Defendant argues, in the alternative, that should the Court find that Plaintiff has adequately pled Count I with particularity that the Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the FCA's public disclosure bar.  Defendants' Motion is made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**, which allows a party to raise as a defense, by motion, a federal court's lack of subject matter jurisdiction over Plaintiff's claims.  **FED. R. CIV. P. 12(b)(1)**.  The Seventh Circuit has stated that although a plaintiff may easily defeat a Rule 12(b)(6) motion to dismiss for failure to state a claim, the same is not true for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  ***Bastien v. AT & T Wireless Services, Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).**  When a defendant makes this challenge, the plaintiff bears the burden of establishing jurisdiction.  The Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff."  ***St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citation omitted)**.  Yet, if necessary, the Court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject matter jurisdiction exists.  ***Id.* (citations omitted)**.

Defendant argues that Plaintiff's claims were publicly disclosed years before Plaintiff filed his complaint and therefore are barred by the public disclosure bar.  Specifically, Defendant argues that Plaintiff's allegations regarding shipping

charges were publicly disclosed in the "news media" and his claims regarding overcharges and failure to remit the proper IFF were publicly disclosed in a GSA Administrative Investigation.

The FCA's jurisdictional bar provides that:

> No court shall have jurisdiction over an action...based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

**31 U.S.C. § 3730(e)(4)(A)**.  The jurisdictional bar prevents a party from capitalizing on the discovery of fraudulent activities that they in no way were a part of.  ***United States ex rel. Mathews v. Bank of, 166 F.3d 853, 860-61 (7th Cir. 1999)***.  The Seventh Circuit has noted that the jurisdictional bar is not to be "excessively narrowly construed" but viewed in light of the 1986 amendments which "broadened the qui tam provisions, increasing incentives for the exposure of fraud."  ***Id.***

In order to determine whether the Court has jurisdiction over the qui tam relator's complaint, the Seventh Circuit has provided a three-part inquiry in which the Court must ask:

(1) Have the allegations made by the Plaintiff been "publicly disclosed"?
(2) If so, is the lawsuit "based upon" that publicly disclosed information?
(3) If so, is the plaintiff an "original source" of the information?

***Id.* at 859 (citing *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 564 n.4 (11th Cir. 1994)))**.  There is a public disclosure under **§ 3730**

(e)(4)(A) "when the critical elements exposing the transaction as fraudulent are placed in the public domain." ***Fowler*, 496 F.3d at 736**.  As to whether the lawsuit is "based upon" that publicly disclosed information, the Seventh Circuit has recently adopted the majority view that "a complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to the publicly disclosed allegations." ***Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009)**.

Accordingly, the Court must first determine if the allegations made by Plaintiff have been publicly disclosed.  As previously stated, allegations are publicly disclosed "when the critical elements exposing the transaction as fraudulent are placed in the public domain." ***Fowler*, 496 F.3d at 736.**  Defendant argues that Plaintiff's allegations regarding shipping overcharges was publicly disclosed through an article published on the internet by Northwestern University.  Defendant further argues that allegations of fraud involving shipping charges and Defendant's failure to remit IFF funds were publicly disclosed in a GSA Administration Investigation. The Court will review each source in turn.

### 1.    *Northwestern University Article*

Defendant first alleges that Plaintiff's claims regarding shipping overcharges to the Government were publicly disclosed in a publication by Northwestern University in 2002.  Plaintiff, on the other hand, argues that the internal publication was not disclosed in the "news media" and did not contain the

critical elements exposing the transaction as fraudulent.  The Court agrees with Plaintiff.  The article Defendant submitted appears to be an internal newsletter directed to the University's employees regarding the purchasing resource services of the University (*See* Doc. 71 Ex. C).  The article reminds various divisions of the school that they are not to be charged for standard shipping from CDW-G and that CDW-G had committed an error in charging shipping, but would be refunding the various departments.  The publication does not appear to be a product of the "news media" as it was an internal publication directed to the school's departments.  ***See United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13 (7th Cir. 1999) (finding that the scheme was publicly disclosed when widely reported in the New York Times and Wall Street Journal); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir. 1999) (the administrative decision regarding the city's activities were published in the news); *United States ex rel. Grear v. Emergency Medical Associates of IL., Inc.*, 436 F.3d 726 (7th Cir. 2006) (medical journals widely reported that teaching hospitals were improperly billing Medicare).**[5]  Further, the purpose of public disclosure is to bring "to the

---

[5]  Defendant asserts that because the publication was published on the internet, that it was publicly disclosed.  Defendant cites to unreported decisions *United States ex rel Brickman v. Bus. Loan Express, LLC*, Case No. 05-Cv-3147, 2007 WL 4553474 (N.D. Ga. Dec. 18, 2007) and *United States ex rel. Unite Here v. Cintas Corp.*, Case No. C 06-2413, 2007 WL 4557788 (N.D. Cal. Dec. 21, 2007) for its proposition that information published on an Internet website constitutes "public disclosure."  However, in *Brickman*, the court found that there was public disclosure because it was an "administrative report" that the public could access off of the Coast Guard website, not merely because it was on a website.  Further, in *Unite Here*, the Court found that the information was publicly disclosed because the company had published the contracts on its website.  While the Court in *Unite Here* found that such postings were reported in the "new media" the Court here is hesitant to find that *any* posting on the internet constitutes "news media."  The publication here, unlike the publications in *Brickman* and *Unite*

attention of the relevant authority that there has been a false claim against the government." ***Feingold*, 324 F.3d at 495 (citing Mathews, 166 F.3d at 861)**.  A posting in an internal publication stating that the Defendant has been overcharging the University for shipping does not bring to the attention of the relevant authority a false claim against the government.  As Plaintiff points out, the publication does not contain the critical elements exposing the transaction as fraud.  The publication does not discuss the Defendant's scheme to overcharge the Government or commit the various other frauds alleged by Plaintiff, nor does it discuss an overall practice by the Defendant or the industry's scheme to overcharge the Government.  ***See Grear*, 436 F.3d at 729 (medical news sources reporting that teaching hospitals were in inspector general's cross-hairs and were continually overbilling Medicare were considered public disclosures even though they did not specifically discuss the defendant's practices).**  Here, the article reminds employees that they are not required to pay shipping costs on items received from the Defendant and that Defendant has been charging the university school and departments for shipping costs.  Nothing in the publication exposes the Defendant's scheme to defraud the Government through the various means outlined in Plaintiff's Complaint.  Therefore,

---

***Here***, was posted on the University's purchasing services website and as demonstrated by Defendant's own affidavit is not easily available to the public (*See* Doc. 70 Ex. D) (Defendant's affidavit from a Research Manager shows that several steps had to be taken to even locate the article as it is currently archived on the University's website and not readily available to the public). Further, the cases cited by Defendant were not from this Circuit and were unpublished opinions not binding on this Court.

the Court finds the Plaintiff's allegations were not publicly disclosed in the Northwestern University article as the publication was not a "news media" nor did it place the "critical elements exposing" the fraud in the public domain.

### 2. CDW-G's Disclosure to GSA

Defendant argues that it publicly disclosed the allegations Plaintiff has alleged in his Complaint when it voluntarily disclosed inadvertent mistakes in IFF funds to the GSA Contracting Officer. Defendant argues that such a disclosure constitutes a public disclosure as it was a voluntarily disclosure to a governmental official "who has managerial responsibility for the very claims being made." *Mathews*, **166 F.3d at 862.**

Defendant is correct that voluntary disclosures to a public official about an alleged false claim is a public disclosure within the scope of §3730(e)(4)(A). *Fowler*, **496 F.3d at 736 (citing** *Mathews*, **166 F.3d at 861).** Further, such disclosure must be to a person with "managerial responsibility" for the claims. *Mathews*, **166 F.3d at 861.** However, such disclosures must also be made pursuant to an administrative investigation. *Id.* at 862 **(finding that the defendant had made the disclosure voluntarily to the official when the official had made an inquiry to the official of the regulated industry).** *See also Fowler*, **496 F.3d at 736 (disclosure was made to the U.S. Attorney's Office in response to the Government's investigation of the defendant's practices).**

Here, however, no such disclosure was made as part of the

Government's investigation into Defendant's practices.  As Plaintiff points out, Defendant's disclosure was made in part due to an "internal audit" conducted by CDW-G which discovered a mistake that had occurred in the IFF funds.  While Defendant correctly points out that such disclosure can be part of an "informal or casual inquir[y] so long as they are undertaken by authorized officials with official purposes," here no such inquiry occurred by the authorized officials. ***Mathews*, 166 F.3d at 862.**  Defendants disclosed their findings as part of its own investigation, not in response to the Government's investigation.  In fact, Defendant admits that it first contacted the GSA Contracting Officer and that GSA then met with CDW-G and reviewed the issues in response to their disclosure (*See* Doc. 71 pp. 16-17, n.52, Ex. E).  No such disclosure was made in response to a "administrative investigation." Therefore, the Court finds that Plaintiff's allegations were not publicly disclosed by CDW-G's communications with GSA.

Accordingly, the Court finds that neither the publication by Northwestern University nor the disclosure to the GSA constituted a "public disclosure" under the FSA jurisdiction bar of **31 U.S.C. § 3730(e)(4)**.  Therefore, the Court need not go on to the remaining factors in the jurisdictional bar analysis. Having determined that there were no public disclosures of the allegations alleged in Plaintiff's Complaint, the Court **DENIES** Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 70).

### III.    Conclusion

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Count I of Relator's Complaint Pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1).  Further, the Court **DENIES** Defendant's Motion to Strike (Doc. 86) as well as Plaintiff's Motion to Strike (Doc. 90).

**IT IS SO ORDERED.**

Signed this 29th day of September, 2009.


/s/        *David R Herndon*

**Chief Judge**
**United States District Court**