IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

U.S.A. ex rel. JOE LIOTINE,

       Plaintiffs,

vs.                                      No.   3:05-cv-00033-DRH-PMF

CDW-GOVERNMENT, INC.,

       Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

      Pending before the Court is the Report and Recommendation ("the Report") issued by Magistrate Judge Phillip M. Frazier (Doc. 331). The Report recommends that the Court grant plaintiff and Relator Joe Liotine's ("Liotine") motions for attorney fees (Docs. 299, 301). Defendant CDW Government Inc. ("CDW-G") filed objections to the Report (Doc. 332). Liotine filed a response to the objections to the Report (Doc. 333) and CDW-G filed a reply to Liotine's response (Doc. 335). Based on the following, the Court **ADOPTS** the Report and **GRANTS** Liontine's request for additional fees.

      On March 5, 2013, the United States and CDW-G settled its False Claims Act ("FCA") dispute for $7 million dollars. At issue was conduct in connection with General Services Administration (GSA) Contract Number GS-35F-0195J. The plaintiff's attorneys were directed to file a petition for attorney fees and did so on

March 12, 2013 (Docs. 299, 301). During the course of this litigation, Liotine acquired the counsel of Aschemann Keller, L.L.C. ("Aschemann firm"), a firm located in the southern part of Illinois, and Helmer, Martins, Rice and Pophamco, L.P.A. ("Helmer firm"), a firm located in Cincinnati, Ohio. Both firms practice a specialty in False Claims Act litigation.

The Helmer firm requested attorney fees totaling $1,954,475.00 for 4,433.45 hours worked with rates per hour varying from $600.00 for a senior partner to $155.00 for a paralegal. The Aschemann firm requested attorney fees totaling $1,628,295.00 for 3,033.3 hours worked with rates per hour varying from $550 for a senior partner to $350 for the associate who worked on the case.[1] Since that time, the parties have engaged in a discordant two-month back and forth regarding the fees and related discovery (*See* Docs. 299 to 335).

On May 17, 2013, Judge Frazier issued the Report recommending an award of attorney's fees in the following amounts:

1. The law firm of Helmer, Martins, Rice and Pophamco, L.P.A. should be awarded a lodestar amount of $1,974,035 and costs and expenses of $38,879.17.

2. The law firm of Aschemann Keller, L.L.C. should be awarded a lodestar amount of $1,527,519 and costs and expenses of $72,675.52.

In so deciding, the Judge adopted Liontine's request regarding their reasonable

---

[1] Judge Frazier provides a detailed account of the firms' requests which the court adopts as its own (*See* Doc. 331 at 3 & 7).

rates, finding the Helmer firm had provided sufficient evidence to support a finding of an actual rate and the Aschemann firm had established an appropriate reasonable rate. Judge Fraizer then reduced the requested number of hours based on specific objections made by CDW-G regarding clerical work and travel time while increasing the number of hours based on additional reporting from the Helmer firm for time spent on this case from March 12 to March 28, 2013. Thereafter, CDW-G filed objections to the Report (Doc. 332). Broadly, CDW-G argues that Liotine's counsel did not meet their burden of demonstrating that their hours and rates sought were reasonable (Doc. 332 at 1). CDW-G does not object the Report's recommendation as it relates to costs and expenses (Doc. 332 at 1, n.1).

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may "accept, reject or modify the recommended decision." *Willis v. Caterpillar Inc.,* 199 F.3d 902, 904 (7th Cir. 1999). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.* Seventh Circuit cases, however, indicate that arguments not made before a magistrate judge are normally waived.[2] *See, e.g., Divane v. Krull Electric Co.*, 194

---

[2] CDW-G provides the Court with detailed exhibits #1-13 in its objection to the Report. As these exhibits were not previously provided to the Magistrate Judge to allow him to address the specificity of counsel's objections, they will not be reviewed.

F.3d 845, 849 (7th Cir. 1999).

A prevailing FCA party is entitled to recover "reasonable expenses . . . plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The burden rests on the prevailing party to establish that it documented the appropriate hours expended and its hourly rates. *Id.* However, the district court has broad discretion in determining the amount of a fee award and may adjust the fee award as it deems necessary. *Id.* at 437; *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable attorney's fee "is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Blum*, 465 U.S. at 897. With these principles in mind, the Court turns to the specific objections to the Report.

## I. <u>REASONABLE RATES</u>

### A. *Helmer Firm*

The Helmer firm requested rates ranging from $600.00 per hour for a lead partner to $155.00 for a paralegal. In support of its request, the Helmer firm submitted two declarations (the "Helmer Declarations") that the rates submitted were the firm's actual rates (Docs. 300-1, 313-1). CDW-G objects to the Report's acceptance of the Helmer Declarations as sufficient evidence to establish Helmer's actual rates and requests the Court use the prevailing market rate in the Saint Louis area (Doc. 332 at 3-9).

Reasonable fees are to be calculated according to prevailing market rates in the community. *Blum*, 465 U.S. at 895. An attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate in determining an award of attorney's fees. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.'" *Id.* at 1313 (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)).

As the Report discussed, while it is true that in some cases an attorney's self-serving affidavit will not be sufficient evidence of actual rates, that is not the case here. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999). The Helmer Declarations are not self-serving, but instead sufficient evidence of the firm's actual rate. Unlike *Spegon* where the firm had no fee-paying clients, here Helmer attests to actual rates charged actual clients. *Id.* Additionally, the Court notes that it is common practice, as the defense should know, to accept thorough declarations of this kind as evidence of an attorney's rates. Therefore, there is no need for the Helmer firm to submit third party affidavits, invoices, or any other record. The inquiry ends there.

### B. Aschemann Firm

The Aschemann firm requested rates ranging from $550 per hour for a senior partner to $350 for an associate. While the Report found that the Aschemann Firm had not submitted sufficient evidence of its actual rates, Judge

Frazier concluded that the rates were reasonable using the Helmer firm's rates as the prevailing market rate. In so finding, the Judge determined that the firms were of similar skill and in the same general geographic region. CDW-G's counsel balks at the rate as per se unreasonable and asserts that the Court should adopt a reasonableness rate from Southern Illinois. Specifically, CDW-G argues that the rates as approved by the Report are a result of some sort of national qui tam bar and are also inappropriately compared to those of CDW-G's counsel (Doc. 332 at 5 & 6).

As noted above, absent the provision of sufficient evidence establishing the firm's actual rate, the Court must look to "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *See People Who Care*, 90 F.3d at 1310. "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.'" *Id.* at 1313. "A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *Id.*

The Court finds no flaw in the Report's analysis. Judge Fraizer concluded the relevant community to include both the Helmer and Aschemann firms. Such a comparison is not farfetched considering the Report's detailed examination of the like skills and reasonable geographic proximity of the two firms. While CDW-G argues that this establishes some sort of national qui tam rate, counsel fails to acknowledge the proximity of "Southern Illinois" (which counsel appears to treat as

its own island) to Saint Louis and Cincinnati as well as the specialized skills required to adequately litigate FCA cases. The Aschemann firm's rate is further supported by a third party affidavit from Southern Illinois practitioner and FCA specialist, Mr. Ronald E. Osman (Doc. 312-4). The Court finds that the Aschemann firm has submitted sufficient evidence for the Court to conclude that the rates requested are reasonable and to shift the burden to CDW-G.

CDW-G has not overcome this burden. The Court finds CDW-G's evidence of the Kurowski firm's rates unpersuasive. The firm is not similarly-situated — it does not have the level of specialization in FCA litigation — and it also, as the Report details, had relatively minor involvement in this case (Doc. 331 at 12).

Finally, overshadowing this discussion of rates is the obvious comparison to CDW-G's attorneys' rates. CDW-G objects to the use of its rates as "the primary evidence of the reasonableness of Liotine's counsels rates" (Doc. 332 at 6). As discussed, CDW-G's rates were not the *primary* evidence used to support the reasonableness of Aschemann's requested rates. To deny that they have a bearing, as the Report notes, is preposterous. The Court agrees with the Report's note, "[t]here is a striking amount of undeniable incredulity in CDW-G's suggestion that a reasonable rate for the Aschemann firm should be set at $230 for partners and $170 for associates when [defense counsel's] associates bill at a rate that is 148% higher than CDW-G's suggested rate for Aschemann's firm's lead attorneys" (Doc. 331 at 11-12).

## II.   <u>REASONABLE HOURS</u>

Liotine's counsel requested 7,376.75 total hours to use as reasonable hours in the lodestar calculation. The Report recommended granting Liotine's request with some minor adjustments addressed below in the "Hour Adjustments" section. CDW-G again generally objects to the burden shifting method used by Judge Frazier, arguing that Liotine's counsel failed to establish that their hours were reasonable and that it was not CDW-G's responsibility to identify specific examples of unreasonable hours. Instead, CDW-G proposes a 40% reduction for all partner-level attorneys and suggests that Magistrate Judge Frazier "was, of course, free to engage in a more time consuming line-item review if the Judge wished to do so" (Doc. 332 at 11).

*Hensley* directs the Court to exclude hours that were not reasonably expended — hours that are excessive, redundant or otherwise unnecessary. 462 U.S. at 434. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* . . . ." *Id.* (emphasis in original). Specifically, a movant is required to "exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437.

Liotine's counsel affirmed in their declarations that they have attempted to exercise billing judgment (Doc. 300-1 at 12 ¶ 41; Doc. 302-1 at 2 ¶ 8). They also submitted billing statements tracking their hours down to a tenth of an hour (Docs. 300-2, 302-2). The Court finds that the billing statements are sufficiently detailed and that, therefore, Liotine's counsel has exercised billing judgment.

The Court conversely rejects CDW-G's proposal to reduce the total hours requested by partner-level attorneys by 40%. CDW-G argues four issues in support of its requested percentage reduction, that 1) Liotine's billing statements are overly broad and vague, 2) time expended on first-to-file and relator fee-sharing issues should have been excluded, 3) entries demonstrate excessive hours and duplication of efforts, and 4) clerical work and travel should not be compensated at requested rates. Judge Frazier rejected CDW-G's proposal because CDW-G failed to provide specific entries it found objectionable. While CDW-G provides additional exhibits now supporting the reduction, as noted above, these exhibits were not presented before the Magistrate Judge and will not be considered by the Court. Therefore, the Court will deny these general objections. "The district court must provide a clear and concise explanation for its award, and may not 'eyeball' and decrease the fee by an arbitrary percentage . . . ." *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 857 (7th Cir. 2009).

### III.   HOUR ADJUSTMENTS

The Court adopts the Report's analysis regarding its adjustments to Liotine's requested hours (Doc. 331 at 21). CDW-G has not objected to these downward adjustments. First, the Court will deduct 50.54 hours from Dale Aschemann and 6.25 hours from Tim Keller. Then the Court will add the additional hours requested by the Helmer firm from March 12 to March 28. Therefore 25.70 additional hours will be awarded to Robert M. Rice, 9.35 additional hours will be awarded to James B. Helmer, Jr., and 0.5 hours will be awarded to both Paul B.

Martins and Jennifer Lambert.

Additionally, the Court has considered Liotine's request for additional fees as a result of the continued litigation on the attorney fees issue. As evidence, Liotine submits a Second Supplemental Helmer Declaration (Doc. 333-2) and a Supplemental Aschemann Declaration (Doc. 333-1). Attached to each declaration is an associated, detailed time report. The Aschemann firm requests 68.75 hours from March 13 to March 12 for a total of $36,093.75 in additional fees. The Helmer firm requests 59.30 hours from March 29 to June 12 for a total of $31, 657.25. The Helmer firm also requests $795.00 in additional costs and expenses. Counsel additionally requests that CDW-G pay interest on the whole award from March 5, 2013, the date of the parties' settlement.

Again, the Court cannot help but note the huge disparity in hours spent on this case between the parties. According to CDW-G's self-reported hours billed, CDW-G spent 2,486 hours or 62 full weeks more than Liotine's counsel on this case.[3]

"A request for attorney's fees should not result in a second major litigation" as it has in this case. *Hensley*, 461 U.S. at 437. Upon review, the Court finds that the additional attorney fees and costs are reasonable given the extremely contentious nature of the attorney fees issue itself. However, Liotine's request for interest on the whole award of attorney's fees from the date of settlement, March 5, 2013, is denied. Under 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money

---

[3] CDW-G reported spending 9, 862 hours on this case (Doc. 332 at 16, n.20).

judgment in a civil case recovered in district court." The phrase "any judgment" is construed as including a judgment awarding attorneys' fees. *See Fleming v. County of Kane*, 898 F.2d 553, 564 (7th Cir. 1990). In *Fleming*, the Seventh Circuit held that post-judgment interest on attorney's fees is allowed only from the date that judgment is entered regarding the specific amount awarded. *Id.* at 565. The attorney's fees judgment has not yet been entered.

## IV. LODESTAR ADJUSTMENT

In its motion for attorney's fees, the Aschemann firm requested a 15% upward adjustment based on the *Hensley* factors.[4] Conversely, CDW-G requested a 15% downward adjustment. The Report declined to adjust the lodestar amount finding that a positive adjustment was unwarranted given the significant fee amount awarded and that a negative adjustment was equally unnecessary because of the plaintiff's success and appropriately proportional award. CDW-G in its objections again requests a 15% decrease in the entire lodestar amount.

The district court has the authority to adjust the product of a lodestar approach. *Hensley*, 461 U.S. at 434. While an adjustment may be made according to the *Hensley* factors, most of these factors are subsumed within the initial lodestar calculation. *See Blum*, 465 U.S. at 888-89.

---

[4] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430, n.3 (citation omitted).

While CDW-G urges the Court to find that the plaintiffs' were ultimately unsuccessful as they received only $7 million of their requested $228 million award. This figure is disputed — Liotine maintains that they requested $28 million.[5] CDW-G also argues that Liotine was ultimately unsuccessful because they "lost" on 8 of their 11 claims at summary judgment. The Supreme Court directs us to look first at whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded, and second at whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434 (quotations omitted). Here, 8 of plaintiff's 11 claims were dismissed on summary judgment but Liotine was nonetheless successful in achieving a 7 million dollar settlement. As the parties have noted, a FCA case has implications beyond the settlement or ultimate monetary award. The very nature of these claims is to help the Government police fraudulent conduct. That victory cannot be overlooked. For the above reasons the award will not be adjusted in either direction.

## V. CONCLUSION

Accordingly, the Court **ADOPTS** the Report (Doc. 331) and **GRANTS** Liontine's request (Docs. 299, 301) for additional fees:

1) The law firm of Helmer, Martins, Rice and Pophamco, L.P.A. should be awarded a lodestar amount of $2,005,692.25 and costs and expenses of

---

[5] As noted in the Report, this figure is disputed (Doc. 331 at 23). It nonetheless remains in dispute (*See* Doc. 332 at 18; Doc. 333 at 16).

$39,674.74.

2) The law firm of Aschemann Keller, L.L.C. should be awarded a lodestar amount of $1,563,612.75 and costs and expenses of $72,675.52.

**IT IS SO ORDERED.**

Signed this 25th day of September, 2013.

Digitally signed by David R. Herndon
Date: 2013.09.25 13:51:44 -05'00'

**Chief Judge**
**United States District Court**